Statement of the Case.
NICHOLLS, J.
This case is the sequel of that reported in 37 South. 756, and in 113 La. 787, under the title “Succession of Henry,” No. 15,280 on the docket of the Supreme Court of Louisiana.
The facts and issues involved, up' to the time of the rendition of our judgment, appear in the reported case.
It appears that, Harley A. W. Howcott having applied to the district court for Livingston parish to be appointed dative testamentary executor of Charles W. Henry (a resident of the city of Philadelphia, and domiciled in the- state of Pennsylvania), he was so appointed April 1, 1904. Henry died in Philadelphia, leaving a will in which he bequeathed all of the property of which he died possessed to his wife, but he appointed no executor to his succession.
After Plowcott had received letters of dative testamentary executorship under the order appointing him, the widow of Charles W. Henry appealed from that order, and for reasons assigned the appointment was set aside by this court and the cause remanded for further proceedings. The annulling of the order of appointment left Howcott’s application for appointment standing. Howcott had based his application for appointment upon the claim that he was a Louisiana creditor of the succession, and the widow and heirs of Henry were absentees.
On November 4, 1904, Mrs. Sallie F. Houston had filed a petition in the district court for Livingston parish, appearing therein as the widow of Charles W. Henry and natural tutrix of his minor children,' and touching the application of Harley A. W. Howcott, filed in April, 1904, to be appointed dative testamentary executor of the last will of her husband, she averred:
First. That she had taken an appeal to the Supreme Court from the judgment of the district court, rendered on April 21, 1904, appointing said Howcott dative testamentary executor, and that until said appeal was decided no further proceedings could be had under his application.
Second. That if said Supreme Court should decide the said judgment appealed from was in advance of a judgment on said appeal, an absolute nullity, but that said application still remained, or if said Howcott himself, should admit that said judgment was an absolute nullity and should attempt to proceed on his said application, in either case opponent averred that all the proceedings' on said application were irregular and void, from and including the petition making said application, and that no action could be taken on said petition and advertisement, but that said advertisement would have to be made anew, and after due registry, proof, and order of execution of said alleged will in and by that court.
Third. That said Harley A. W. Howcott was not, and never had been, a creditor of the *452 succession of C. W. Henry, as alleged in his said petition, and that he has no standing nor right to demand, as creditor, the opening of the succession of the said C. W. Henry, nor to impose on it the costs of an administration.
Fourth. That an administration of said succession was unnecessary, unless opponent should desire it for convenience of settling the interests of herself and minor children. That opponent, therefore, opposed the appointment of any administrator or dative executor to said succession. That the only creditors of said succession were persons in Pennsylvania, who left the question of opening said succession or not to opponent, as she might desire in her own convenience. That opponent was ready to carry out all existing and valid contracts of said C. W. Henry, if such there were, and pay all his indebtedness of every kind.
Fifth. That if the court should decide that a dative testamentary executor should be appointed to said succession, then opponent was entitled to, and thereby demanded, said appointment by perferenee and priority over said Harley A. W. Howcott, but that no 'testamentary executor could beÉ appointed herein until the last will and testament of said late Charles W. Henry should have first been produced, filed, registered, and ordered executed in and by the court, and due advertisement should thereafter have been made and legal proper inventories should have been taken, as required by law, and the other requirements of the law should have been duly observed and fulfilled.
In view of the premises, opponent prayed that her opposition to the application of Harley A. W. Howcott, in case of his attempting to take any further action on said application, be duly served on said Harley A. W. Howcott, and that it be sustained, and that the demand of said H. A. W. Howcott to be appointed dative testamentary executor of the said last will and testament of the said late Charles W. Henry be rejected, at his costs, and that the court decree that an administration of that succession was not necessary; and, if the court considered an administration necessary, then opponent prayed that she be decreed to be entitled to be appointed dative testamentary executor of the last will and testament of said late C. W. Henry by preference and priority over said Harley A. W. Howcott, and accordingly that opponent, after proceeding and filing said last will and testament and proceedings, the proper order to register and execute the same, and after causing legal and valid inventories to be taken according to the law of the property of the succession of the said late C. W. Henry, and after otherwise complying with the requirements of the law in the premises, she be appointed and qualified as dative testamentary executor of the succession of the late O. W. Henry; and .opponent further prayed for all general and equitable relief to which she might be entitled.
On the return of the case to the district court the contest of the dative executorship of the succession between Harley A. W. Howcott and the widow of O. W. Heniy was renewed, and on May 5, 1905, the district court sustained the opposition of the widow of Henry to the appointment of Howcott as dative testamentary executor, and decreed that she herself be appointed such.
From that judgment Howcott has appealed.
The widow of Charles W. Henry, for herself and her minor children, answered his appeal, praying that, in so far as the judgment appealed from decreed that there was a necessity for an administration of the succession of Charles W. Henry, it be reversed. They prayed, further, that the said judgment be amended by decreeing that Harley A. W. Howcott was not a creditor of the succession of Henry, for the reason that the contract which he claimed to own was a contract for *453 the personal services of his father, W. H. Howcott, and. was, therefore, not assignable, and that in any case, even if assignable, it was a conditional contract, the condition of which had not yet been performed, and that no holder of such a contract was or could be a creditor of said succession until the condition of the contract had been performed, and that no administration of the succession was necessary to enable the holder and owner of the contract, whoever it might be, from performing the condition of the contract, and to claim what might then be due him. They prayed, if the Supreme Court should hold that an administration of the succession was necessary, that the judgment of the district court according the administration to Mrs. Henry, be affirmed.
The testimony in the case discloses: That C. W. Henry, a resident of the state of Pennsylvania, died in Philadelphia, in November, 1903, leaving a will in which his wife, Mrs. Sallie Henry, was made his universal legatee. That he left at his decease three minor children, issue of his marriage with Sallie W. Henry, and said children reside with her in Philadelphia. He left an estate consisting of large tracts of land in the parishes of Tangipahoa and Livingston, all of which had been purchased for him and his brother-in-law, Houston (though the title was placed in the name of Henry), through the instrumentality of Mr. W. H. Howcott, a resident of Louisiana, on terms which seem to have been verbally agreed upon between them. On the 7th of July, 1897, however, the following written agreement was entered into between the parties :
“This agreement, between Samuel F. Houston and Charles W. Henry, of the city of Philadelphia, state of Pennsylvania, of the one part, hereafter called ‘the party of the first part,’ and William H. Howcott, of the city of New Orleans, state of Louisiana, of the other part, hereafter called ‘the party of the second part,’ witnesseth: That the said parties of the first part, for and in consideration of the services rendered and which are to be rendered by the said party of the second part, and in lieu of commissions on purchases or sales of land and the examination and the perfection of titles to the same, agreed to pay the said party of the second part one-fifth of the net profits arising from the sale of lands now standing in the name of Charles W. Henry in the state of Louisiana, purchased for the parties of the first part by the party of the second part, after taxes and interest computed annually at the rate of five per cent. (5 per cent.), are added to the principal.
“It being understood and agreed that the said party of the second part, his heirs or assigns, shall have no claim or demand for any services rendered against said parties of the first part, their heirs or assigns, excepting there shall be a profit on the sale or disposal of the above mentioned land.
“In witness whereof, we have hereunto set our hands and seals the day and year above written. .
“[Signed] Samuel Frederick Houston. [Seal.]
“Chas. W. Henry. [Seal.]
“Signed, sealed, and delivered in the presence of:
“[Signed] Edgar Dudley Faries.
“Wm. I-I. Howcott. [Seal.]
“Truly recorded Dec. 21, 1899, in Conveyance Book No. 10, pages 439 and 440, and Mortgage Book No. 5, page 428.
“[Signed] M. Cooper, Clerk and Recorder.”
“Truly recorded March 1, 1900, in Conveyance Book No. 7, on pages 458-9, and in Mortgage Book No. 4, on page 84 of records of the parish of St. Helena.
“[Signed] Adville Adkins, Dy. Clerk.”
“Truly recorded March 6, 1900, in Conveyance Book 332, page 749, and in Mortgage Book 14, pages 19 and 20, records of the parish of Tangipahoa, state of Louisiana.
“[Signed] J. Hamilton Warner,
“Clerk and Ex-Officio Recorder. “State of Louisiana, Parish of Tangipahoa.
“I hereby certify the above and foregoing to be a true and correct copy of the original agreement, now on file in my office, this 8th day of October, A. D. 1904.
“A. R. Lewis, Clerk of Court, “Parish of Tangipahoa, La.”
After the death of Henry the following agreement was entered into on January 27, 1904, between W. H. Howcott and his son, Harley A. W. Howcott:
“For and in consideration of one thousand dollars ($1,000.00) cash and other valuable considerations, I hereby assign, set over, transfer and deliver unto Harley A. W. Howcott, of the city of New Orleans, state of Louisiana, all of my interest, right, title, etc., in and to a certain contract with myself and Samuel Frederick Houston and Charles W. Henry, which is duly recorded in the parish of Livingston, *454 •C. O. B. 10, pages 439 and 440, and Mortgage Book No. 5, page 428. Also recorded in the parish of St. Helena, O. O. B. 7, pages 468 and 459, and Mortgage Book No. 4, page 89. Also recorded in the parish of Tangipahoa in Mortgage Book No. 14, pages 19 and 20, C. O. B. 32, page 749.
“It being well understood that the said Harley A. W. Howcott is to prosecute and carry ■out all the contents of the said contract with the said Charles W. Henry and Samuel Frederick Houston as myself.
“[Signed] Wm. -H. Howcott.
“Harley A. W. Howcott.
“Witnesses:
“[Signed] O. Hale.
“Horace M. Roberts.
“J. G. Eustis, Not. Pub. [Seal.]
“State of Louisiana, Parish of Tangipahoa.
■ “I hereby certify the above and foregoing is a true and correct copy of the original act of assignment from Wm. H. Howcott to Harley A. W. Howcott, now on file in my office, this 8th day of October, A. D. 1904.
“[Signéd] A. R. Lewis, Clerk of Court,
“[Seal.] Parish of Tangipahoa.”
It was upon the rights which he believed he had acquired through this contract, and which he assumed gave him the status of a present creditor of the succession of Henry, that H. A. W. Howcott had applied to be appointed dative testamentary executor of the succession of Henry, and received the appointment as such, which was set aside by the judgment of this court as hereinbefore •stated.
Opinion.
It is pressed upon the court, on behalf of the widow and appellee: That Harley A. W. Howcott is not now, nor has ever, been a creditor of C. W. Henry or his succession. That he is neither an heir nor a legatee, nor has he any interest in the succession. That he had always been without right to open the succession, or to procure himself to be appointed as representative thereof, under any name or in any capacity. That he does not now claim to be a creditor for any other ■cause than under and by reason of his ac•quisition of the ownership of his father’s interest in the contract of January 7, 1897.
That that contract, quoad Henry, his succession, and Houston, was one not assignable by Howcott under the terms of article 2007 of the civil code, as it was a contract for the hire of labor, skill, and industry, and it was personal as to its performance. That it was not extinguished as to Houston and the succession of Henry by the death of Henry. That, conceding it to be assignable, Harley Howcott could acquire no other or greater rights than his transferror had; and, as W. H. Howcott could claim or take nothing until all the lands had been sold and the question of profits had been fixed and determined, so neither could the transferee do so.
Referring to this matter, the district judge said:
“As to whether Mr. Harley Howcott is a creditor I express no opinion. * * This is not a proper time to pass on the validity of his claim. I express no opinion concerning the same, except to say that Mr. Harley Howcott is a citizen of this state, 'and he is apparently seriously and earnestly pressing his claim to remuneration for services under said contract, and the pretensions, although uncertain and doubtful, still have about them enough of a plausible and serious aspect to require in justice to him the appointment of a representative of said estate, contradictorily with whom he can have his claim passed upon by the court. * * * His claim cannot be safely said to be entirely fictitious and unworthy of regard by the court; but I think the widow in community and universal legatee entitled to be appointed dative testamentary executor by preference over Harley Howcott.” Succession of Barber, 52 La. Ann. 957, 27 South. 361.
The succession of Barber was a succession opened in Louisiana, and all the parties before the court were residents of that state. The contest in that suit (as in the present one) was one between the widow and heir of the deceased and a party alleging himself to be a creditor of the succession for appointment as the representative of the succession and the necessity of placing the succession under administration.
The court in that case used the following language:
“This brings us to the question whether Woodley Watson is entitled to the administration. He earnestly avers that he is a creditor *455 of the succession and that he is entitled to be appointed its administrator. While he may have sufficient interest in the settlement of the succession of Thomas Barber to provoke the appointment of an administrator, we are not certain that he is a creditor entitled to a judgment for his claim as a creditor. It appears that his rights in that respect depend very much upon the weight to be given certain evidence and are further dependent upon the result of a settlement; for while it may be, for all we know, that he is a creditor, it is also evident that he is a debtor of the succession. But, even if we concede for a moment that he is a creditor, he still would not be entitled to the administration. As between one claiming as a creditor and an heir, even though that heir be the widow of the deceased, the Code recognizes the rights of the latter.
“In the case before us, not only was Mrs. Henry made the universal legatee of her husband by his will, but she is the widow in community of the property in Louisiana. The husband’s will has been probated in Pennsylvania, and also recognized and recorded in Livingston parish on the application of Harley Howcott, while the widow herself has been appointed in Pennsylvania administratrix with the will annexed.”
Howcott has no further interest in this succession than that his rights be safeguarded.
We think the decision of the district court is correct which holds that, if the succession of Henry had to be placed under administration in Louisiana, the widow should be appointed as dative testamentary executrix by preference over Harley Howcott.
The contract between W. H. Howcott and Henry and Houston was one of mandate. Ordinarily the services of the mandatory are gratuitous, but they are not necessarily so. Oiv. Code, art. 2991. In this case remuneration was agreed upon on terms and conditions fixed by the parties. Whether those terms were wise or not it is not our province to determine. They were not “illegal,” and they are the law between the parties as to their rights and obligations. At the time of the death of Henry the contract between them was in full force. It would be so now, had Henry not died. We do not think it was brought to an end, ipso facto, by his death. It is in existence now, so far as we are advised. The relations between W. H. Howcott and Henry and Houston were those of principals and agent,' not those of debtor and creditor, though from those relations would ultimately spring (as agreed upon) the relations of debtor and creditor. W. H. Howcott had neither privilege nor pledge upon the lands, nor the right to sell the same. Henry and Houston had the legal power to sell without Howcott’s consent and concurrence, and so, also, they had the right to terminate the contract, subject, for doing either the one or the other, to the legal rights and remedies of the agent. His action under such circumstances would be a personal one against the parties. Assuming the contract between the parties to be still in existence and Henry still alive, Mr. W. H. Howcott would have no present right or cause of action against the principals. If this be so,, could he by transfer or sale to his son convey to him a right other or greater than he had himself? AVe do not think he could (conceding that as between himself and his son that contract carried with it legal results, of some kind). Unquestionably Mr. W. H.. Howcott by and through his contract acquired rights of some kind; but they were rights contingent ultimately as to existence and extent upon the situation of affairs at the termination of the agency. That situation has not yet become fixed.
The only concern, as we have said, that appellant has in this matter, is the protection of his own interests. We are relieved in this case of the necessity of determining whether the interest of Harley Howcott in the matter of O. W. Henry’s property was-of such character as to entitle him after the latter’s death to force his succession to be placed under administration, with its attendant expense and costs, for the reason that the widow of Henry, who was the only person contesting the right, has expressed her willingness to secure any eventual rights *456 which Howcott may have, and has, besides, acquiesced in the judgment appointing her as dative testamentary executrix, by qualifying as such under the judgment and giving bond.
The branch of the judgment which denied her the right of being presently placed in actual' possession of the property cannot be acted upon by us on this appeal. The succession is now under administration, and the proceedings for possession must be made hereafter in the district court through proceedings there taken contradictorily. Her right to take actual possession in the future, upon her compliance with the requirements which may be imposed upon her by law to obtain such possession, is not closed by this judgment, but is left open.
For the reasons herein assigned it is hereby ordered, adjudged, and decreed that the judgment of the district court, herein appealed from, be, and the same is, hereby affirmed, at appellant’s costs.